IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM WALLACE,                         *

     Plaintiff,                        *

         v.                          *              Civil Action No. DKC-22-3222

OFFICER ENYINNAYA OBI,
                                   *

     Defendant.

                             ***

## MEMORANDUM OPINION

Self-represented Plaintiff William Wallace, an inmate presently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Officer Enyinnaya Obi.  ECF No. 1.  Mr. Wallace alleges that while he was housed at Jessup Correctional Institution ("JCI"), Officer Obi used excessive force against him during an incident on November 6, 2022.  *Id.* at 3-5.  As relief, Mr. Wallace seeks $250,000.  *Id.* at 6.

On May 12, 2023, Officer Obi filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  ECF No. 11.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed Mr. Wallace that the failure to file a response in opposition to the motion could result in the dismissal of his complaint.  ECF No. 14.  On May 26, 2023, the court received correspondence from Mr. Wallace inquiring about the progress of his case as well as the availability of camera footage related to his claim and asking the Clerk to send documents to his new address at NBCI.  ECF No. 15.  The Clerk promptly sent Mr. Wallace another copy of the *Roseboro* notice.  Then, on June 7, 2023, counsel for Officer Obi informed the court that Mr. Wallace had viewed the requested video surveillance footage on June 1, 2023.  ECF No. 16.  Mr. Wallace filed nothing further.   Included in Officer Obi's motion is the video, Exhibit 1 to ECF

No. 11.  Other exhibits are the IID investigation, a statement of Lieutenant Addison to the Chief of Security, a serious incident report,  a matter of record, a statement not under oath from Officer Obi, and several other matters of record with illegible signatures and a "records declaration" attesting that the records were made "at or near the time of the recorded event, by an individual with personal knowledge of the recorded event, and were kept, made, and maintained by the DPSCS."  ECF Nos. 11-3 and 11-5.  Because the evidence originally submitted in support of the motion failed to include a declaration identifying the individuals on the lengthy video or Officer Obi's statement under oath describing his role in the events captured in the video, Officer Obi was directed to supplement his motion with additional evidence.  ECF No. 17.  Officer Obi thereafter submitted a signed declaration describing the events at issue.  ECF No. 20.

Having reviewed the submitted materials, the court finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons set forth below, Officer Obi's motion, construed as one for summary judgment, will be granted.

## BACKGROUND

Mr. Wallace, in his unverified complaint, alleges that at approximately 9:45 p.m. on November 6, 2022, Officer Obi was escorting Mr. Wallace's cellmate back to their cell when Mr. Wallace, who was in the cell, complained of chest pains.  Complaint, ECF No. 1 at 3.  Officer Obi restrained Mr. Wallace with handcuffs and informed him that he would not be taken to the medical unit.  *Id.*  When Officer Obi opened the cell door, Mr. Wallace stepped out and walked to the back of the tier asking for medical attention.  *Id.*  Officer Obi followed Mr. Wallace, along with another officer, and grabbed Mr. Wallace's arm.  *Id.*  Officer Obi "became aggressive" and grabbed Mr. Wallace's wrist, tightening his handcuffs until his arms were bleeding.  *Id.*  Mr. Wallace claims that Officer Obi also verbally threatened him then slammed his head against the wall.  *Id.*

2

According to Mr. Wallace, another officer directed Officer Obi to let Mr. Wallace go, but he refused until six officers pried him off. *Id.* at 4. Mr. Wallace alleges that, as a result of the incident, he has suffered migraines and psychological trauma. *Id.* at 5-6.

The video[1], as described in Officer Obi's memorandum and later in his declaration, shows that at approximately 10:11 p.m. on November 6, 2022, he was monitoring the B Wing at JCI while Sergeant Ukpelegbu and Officer Adebayo escorted Mr. Wallace's cellmate back to their cell. Surveillance Video, ECF No. 11-2 at 10:12 p.m. Officer Obi does not dispute that prior to opening the cell door, he secured Mr. Wallace in handcuffs and that after the cell door was opened, Mr.

---

[1] The undersigned was able to view the video, even though it is not in a format compatible with the court's system. Counsel should be cognizant of the requirements for filing electronic exhibits. Although leave of court is not required, the permissible formats still apply:

> Except in civil prisoner cases, a party must seek leave of court to permit the non-electronic filing of exhibits that are not convertible to PDF format (e.g., videos, audio files, etc.) and must be filed on a CD or other physical medium. If leave is granted, the Court will only accept video or audio files in the following file formats: .avi, .mp3, .mp4, .mpeg, .wma, .wav, and .wmv. If you have a physical exhibit, create and file a Notice of Filing of Physical Exhibit. This notice serves as a placeholder for the exhibit that cannot be electronically filed. Within 24 hours (not counting intervening weekends and legal holidays) you must file and serve the exhibit in physical format along with:
>
> • a traditional Certificate of Service
> • a paper copy of the Notice of Filing of Physical Exhibit
> • a paper copy of the Notice of Electronic Filing (NEF)
>
> In addition, the Clerk's Office must receive the original of any exhibit that cannot be electronically filed in the system. This version will be used as the official court record. The copy for the Clerk's Office is in addition to any courtesy copy which you are required to provide to chambers.

https://www.mdd.uscourts.gov/content/physical-exhibits.

The video (two camera views of the tier) contains three time indicators, one of which differs from the other two by one hour. The time indicated on the bottom of the video in the bar controlling the video is the one referenced in this memorandum.

Wallace exited the cell and walked to the rear of the tier. *Id.* at 10:12-10:14 p.m. As Officer Obi and Sergeant Ukpelegbu slowly approached him, Mr. Wallace attempted to evade Officer Obi. *Id.* at 10:14 p.m. Thus, Officer Obi looped his arm around Mr. Wallace's arm, and both officers began escorting Mr. Wallace back to his cell. *Id.*

Approximately halfway back to his cell, Mr. Wallace attempted to yank himself free from the two officers. *Id.* at 10:14:50 p.m. Officer Obi and Sergeant Ukpelegbu pressed Mr. Wallace against the wall to gain control of the situation. *Id.* Officer Adebayo then came to assist, and Sergeant Ukpelegbu released Mr. Wallace's right arm while Officer Obi maintained a hold of his left arm. *Id.* Officer Obi positioned himself so that Mr. Wallace remained against the wall while all three officers slowly escorted him back to his cell door. *Id.*

Additional correctional officers arrived to assist as Mr. Wallace continued to argue with the officers near his cell. *Id.* at 10:18 p.m. Officer Obi maintained his hold on Mr. Wallace's left arm, but when the cell door was opened, Mr. Wallace refused to enter his cell. *Id.* at 10:19:40 p.m. Correctional officers pushed Mr. Wallace into his cell and Officer Obi was pulled into the cell with him. *Id.* The video does not depict what happened inside the cell. With the assistance of other officers, Officer Obi was pulled out of the cell, appearing aggravated. *Id.* at 10:20 p.m. Other officers prevented Officer Obi from going back toward Mr. Wallace's cell, and he soon exited the tier. *Id.* Officer Obi additionally declares that Mr. Wallace kicked him in his stomach and back after pulling him into the cell, and that he sustained injuries to his right hand, arms, stomach, and back as a result of the incident. Obi Decl., ECF No. 20-1 at 2.

After Mr. Wallace's cell door was secured, Mr. Wallace refused to let the remaining officers remove his handcuffs. ECF No. 11-2 at 10:20 p.m. Instead, Mr. Wallace extended his hands through the feed slot and began throwing a liquid substance at the officers. *Id.* He also

threw a cup at the officers through the feed slot. *Id.* at 10:20:29 p.m. After officers secured the feed slot, Mr. Wallace spat at them and hit one of the officers in the face. *Id.*; *see also* ECF No. 11-3 at 14. After unsuccessful attempts to remove Mr. Wallace's handcuffs, all correctional officers exited the tier. *Id.* at 10:25 p.m.

Several minutes after 11:00 p.m., four correctional officers approached Mr. Wallace's cell, and the cell door was remotely opened. *Id.* at 11:12 p.m. Mr. Wallace exited the cell, still secured in handcuffs, and was escorted to the medical unit without incident. *Id.* He was examined by a nurse at 11:17 p.m. who noted that he had no injuries "except for a small abrasion on left wrist from the position of the cuff." Med. Records, ECF No. 12 at 3.. Mr. Wallace also "denied any apparent distress including chest pain, headache or dizziness." *Id.*

## STANDARD OF REVIEW

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations

omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).  At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  U.S. Const, Amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  Notably, it "proscribes more than physically barbarous punishments."  *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Eighth Amendment "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'"  *Id.* (citation omitted).  Thus, it "protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that when a state holds a person "against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338-39 (4th Cir. 2021).

The Fourth Circuit has determined that "not all Eighth Amendment violations are the same; while some constitute 'deliberate indifference' others constitute 'excessive force.'"  *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).  Here, Mr. Wallace claims that Officer Obi used excessive force on November 6, 2022, when he grabbed Mr. Wallace's wrist, tightened his handcuffs until his arms were bleeding, verbally threatened him, and slammed his head against the wall.

"In assessing a claim of excessive force, courts ask 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them.'" *Lombardo v. City of St. Louis, Missouri*, ___ U.S. ___, 141 S. Ct. 2239, 2241 (2021) (per curiam) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989) (some internal quotation marks omitted)); *see also Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Notably, "the inquiry 'requires careful attention to the facts and circumstances of each particular case.'" *Lombardo*, 141 S. Ct. at 221 (quoting *Graham*, 490 U.S. at 396).

A prisoner's Eighth Amendment claim of excessive force involves both an objective and a subjective component. *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). The objective component asks whether the force was sufficiently serious to state a claim. *Id.* But this "is not a high bar, requiring only something more than '*de minimis*' force." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam). The subjective component asks whether the officer "'acted with a sufficiently culpable state of mind'" and is "a demanding standard." *Brooks*, 924 F.3d at 112 (citation omitted). Notably, the state of mind is one of "'wantonness in the infliction of pain.'" *Id.* at 112-13 (quoting *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008)).

Whether the force used by a prison official was wanton is determined by inquiring if the "'force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hudson*, 503 U. S. at 6 (citation omitted; some quotation marks omitted). The court must consider the need for the application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made by prison

officials to temper the severity of their response.  *Lombardo*, 141 S. Ct. at 2241; *Kingsley*, 576 U.S. at 397; *Whitley*, 475 U.S. at 321.

A corrections officer acts in a "'good faith effort to maintain or restore discipline,'" *i.e.*, with "a permissible motive," when confronting "immediate risks to physical safety" and when attempting to "'preserve internal order' by compelling compliance with prison rules and procedures."  *Brooks*, 924 F.3d at 113 (quoting *Hudson*, 503 U.S. at 6-7).  In contrast, the use of force "to punish an inmate for intransigence or to retaliate for insubordination" would "cross the line into an impermissible motive."  *Brooks*, 924 F.3d at 113.

Here, the video, which is consistent with Officer Obi's declaration describing the events, shows that Mr. Wallace exited his cell without permission, as he admits in the complaint.  As a result, Officer Obi and other officers attempted to secure him and return him to his cell.  Because Mr. Wallace resisted the officers and tried to free himself, Officer Obi kept him pressed against the wall as they walked back toward the cell.  The surveillance video does not show that Officer Obi slammed Mr. Wallace's head against the wall.   It does not show Mr. Wallace's head against the wall at all.  Instead, his right shoulder is kept close to the wall as he is walked back to the cell door.  It is evident that the efforts of several officers were required to return Mr. Wallace to his cell, where he continued to act aggressively for more than half an hour until they could finally transport him to the medical unit.  Officer Obi's declaration describing the events is consistent with the incident as seen on the video.

During Mr. Wallace's medical evaluation, he reported no chest pain, headache, or dizziness, and a nurse observed that he had no injuries except for a small abrasion on his left wrist.  Meanwhile, Officer Obi reported injuries to his right hand, right and left arm, stomach, and back.

As noted at the outset, Mr. Wallace's complaint is not verified and he has not filed any substantive response to Officer Obi's motion or summary judgment materials. Thus, the summary judgment record remains uncontradicted and clearly demonstrates that Officer Obi did not use excessive force. Even if Mr. Wallace's version were to be in evidentiary form, it would be overcome by the video evidence: "At the summary judgment stage, a district court may only disregard the nonmoving party's version of the facts if video evidence "blatantly contradict[s]" it. *Scott v. Harris*, 550 U.S. 372, 380 (2007)." *Poindexter v. Sandy*, No. 21-6638, 2022 WL 1656126, at *3 (4th Cir. May 25, 2022). Mr. Wallace's contention was that Officer Obi slammed his head against the wall during the escort back to his cell. The video—viewed from both ends of the tier— plainly shows that did not happen. The video does confirm that, some minutes later, Officer Obi was pulled into Mr. Wallace's cell and was pulled out by the other officers, visibly upset. Mr. Wallace's complaint, however, focuses on Officer Obi's alleged actions on the tier. Without that predicate, the few seconds of their interaction, as multiple officers were trying to get Plaintiff back into his cell and Officer Obi out, is insufficient to allege excessive force. Mr. Wallace only alleges that Officer Obi would not let him go once they were inside the cell.

On this record, the evidence is uncontradicted that Officer Obi, tasked with maintaining order in Mr. Wallace's housing unit, did not use excessive physical force to inflict pain sadistically or maliciously. Rather, the force used by Officer Obi was applied in a good faith effort to return Mr. Wallace to his cell and was objectively reasonable in light of the situation. Therefore, Officer Obi is entitled to summary judgment.[2]

---

[2]   In light of this ruling, the court need not address Officer Obi's remaining arguments invoking sovereign and qualified immunity.

## CONCLUSION

For the foregoing reasons, Officer Obi's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, will be granted.  A separate Order follows.

Date: March 12, 2024                                         /s/
_____
DEBORAH K. CHASANOW
United States District Judge